IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| FLOYD R. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | CV-02-680-ST |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| PROGRESSIVE NORTHWESTERN | ) | |
| INSURANCE COMPANY, an Ohio corporation, | ) | |
| HARLEY DAVIDSON INSURANCE SERVICES, | ) | |
| INCORPORATED, a Nevada corporation, LATUS | ) | |
| MOTORS HARLEY DAVIDSON, a Washington | ) | |
| corporation, KIMBERLY LOGSDON, ALTA | ) | |
| POLLACK, DOUGLAS C. FORST, ANDY | ) | |
| BOYLAN, and DAN RYDELL, | ) | |
| | ) | |
| Defendants. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Based on a settlement reached at a mediation on May 3, 2005, the parties agreed that this

court would determine if plaintiff, Floyd R. Miller ("Miller"), was entitled to an award of

attorney fees and, if so, the amount. Accordingly, Miller has filed a request for attorney fees in

1 - FINDINGS AND RECOMMENDATION

the sum of $70,814.90[1] and out-of-pocket expenses of $1,244.01. Defendants contend that the amount sought as attorney fees is excessive and unreasonable and that none of the expenses, except the filing fee, are recoverable under 28 USC § 1920. For the reasons set forth below, Miller should be awarded attorney fees in the sum of $46,806.40 and out-of-pocket expenses in the sum of $817.01, for a total of $47,623.41.

## BACKGROUND

This dispute arises over the amount of insurance coverage due on Miller's two customized Harley Davidson motorcycles which were stolen in May 2000. In April 2001, Miller's insurer, Progressive Northwestern Insurance Company ("Progressive"), paid Miller what it contended was the amount due under the policy, namely the actual cash value of $36,575. However, Miller felt that he was entitled to recover the policy's higher Stated Value of $67,825 which was based on his pre-application appraisals.

To recover the additional $31,250, Miller filed his initial Complaint in April 2002 and an Amended Complaint in May 2002 against Progressive, Harley Davidson Insurance Services, Incorporated ("Harley Davidson Insurance"), Latus Motors Harley Davidson, Incorporated, Kimberly Logsdon, Alta Pollack, Douglas C. Forst, Andy Boylan ("Boylan"), and Dan Rydell, in Multnomah County Circuit Court for the State of Oregon, *Floyd R. Miller v. Progressive Northwestern Insurance Company, et al.*, Case No. 0204-03724. Miller alleged claims for violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), fraud, negligence, breach of contract, contract reformation and declaratory judgment. Boylan, the first

---

[1] Miller requests an additional 3.8 hours in connection with submitting the Reply.

2 - FINDINGS AND RECOMMENDATION

defendant served with the Amended Complaint, then timely filed a Notice of Removal to this court based on original subject matter jurisdiction.

Progressive and Boylan responded to the Amended Complaint with a motion to dismiss or, in the alternative, to stay litigation pending completion of an appraisal as required by the policy. This court was persuaded that an appraisal was necessary given questions of fact as to: (1) whether Miller purchased the Stated Value Coverage Option that included his desired additional coverage for customization; (2) whether Miller's initial appraisals were accurate; and (3) whether the replacement cost exceeds the appraised value and/or Stated Value. On August 12, 2002, this court issued Findings and Recommendations to deny the motion to dismiss and to grant the alternative motion to stay. Miller then filed a motion for partial summary judgment. On October 16, 2002, the court entered an Order adopting the Findings and Recommendations, denying the motion for partial summary judgment, and staying this action for an appraisal.

Progressive initially estimated that the selection of each party's appraiser, and, if necessary, an umpire, and the appraisal proceedings could be completed within 60 days. However, the parties had difficulty selecting appraisers and an umpire and in completing the appraisal process. When the appraisal was not completed by July 2004, this court ordered the stay to be lifted if the appraisal was not completed by September 30, 2004. Although the appraisal process was later completed, it failed because neither of the party's own appraisers accepted the umpire's valuations. Finally in March 2005, the court continued the stay for another 60 days while the parties pursued court-ordered mediation.

The mediation concluded with a settlement in which defendants agreed to pay Miller the sum of $45,000 and have the court "set Miller's attorney [fees], costs and disbursements. Both sides have the right to brief attorney fee issue and argue if Court will allow." May 3, 2005 handwritten settlement agreement attached to Miller's Request for Determination of Attorney Fees, Costs and Disbursements.[2] Miller claims that he is entitled to recover attorney fees for his RICO claims under 18 USC § 1964(c) and for his insurance contract claims (breach of contract, reformation of contract, and declaratory judgment) under ORS 742.061.

In October 2003, Miller dismissed defendants Alta Pollack, Latus Motors Harley Davidson and Kimberly Logsdon. Therefore, the only remaining defendants are Progressive, Harley Davidson Insurance, Boylan, Forst and Rydell.

## DISCUSSION

## I.    Entitlement to Attorney Fees and Costs

Miller seeks an award of attorney fees and costs pursuant to both RICO, 18 USC § 1964(c), and ORS 742.061.

Nothing in the record supports an award of attorney fees and costs to Miller on his RICO claims. As the prevailing party on his RICO claims, Miller would be entitled to attorney fees under 18 USC § 1964(c) which provides that: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter . . . shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." Miller did not establish by motion or otherwise that any of the defendants violated RICO. To prevail on his RICO claims, Miler must prove that defendants engaged in "mail and wire fraud" to "a scheme of

---

[2] In their Response, defendants move to strike this document as inadmissible. Because reference to that document is necessary to determine the parties' agreement, that motion is denied.

fraudulently obtaining funds through false pretenses" from him "and other similarly situated

persons." Amended Complaint, ¶¶ 8, 12, 21-25. Miller has presented no such proof.

Instead this case was stayed in order to defer the dispute to an appraisal which Miller

unsuccessfully resisted. After the appraisal failed, this court ordered mediation which resulted in

a settlement. Although Miller argues that the merits of these claims were a material factor in

obtaining a settlement short of trial, the amount of the settlement is a strong indication that

defendants believed the RICO claims alleging treble and punitive damages lacked any merit.

Absent an agreement by the defendants to pay attorney fees, Miller cannot be deemed a

prevailing party on his RICO claims who is entitled to recover his attorney fees.

However, the record contains sufficient information to support an award of attorney fees

against Progressive under ORS 742.061(1) which provides as follows:

> Except as otherwise provided in subsections (2) and (3) of this section, if
> settlement is not made within six months from the date proof of loss is
> filed with an insurer and an action is brought in any court of this state
> upon any policy of insurance of any kind or nature, and the plaintiff's
> recovery exceeds the amount of any tender made by the defendant in such
> action, a reasonable amount to be fixed by the court as attorney fees shall
> be taxed as part of the costs of the action and any appeal thereon.

It is undisputed that a settlement was not made within six months from the date that

Miller filed a proof of loss with Progressive. Under ORS 742.061, "plaintiffs are entitled to

attorney fees if their recovery exceeds the amount of any timely tender made by defendant."

*Dockins v. State Farm Ins. Co.*, 329 Or 20, 34, 985 P2d 796, 803 (1999). Progressive did not

make a timely tender. Miller then filed this action and his recovery, albeit through settlement,

exceeds the amount paid by Progressive before the action was filed. Therefore, pursuant to ORS

742.061, Miller is entitled to recover from Progressive his reasonable attorney fees incurred on

his claims related to enforcement of the insurance policy (breach of contract, reformation of contract, and declaratory judgment).

## II.    Amount of Attorney Fees

### A.    Legal Standard

To determine a reasonable attorney's fee awarded under ORS 743.114 (the predecessor to ORS 742.061), a court "must attempt to ascertain the reasonable value of such services, based not only upon the amount of time required, but also such additional factors as the novelty and difficulty of the question involved, the amount involved and the results obtained, among other factors." *Chalmers v. Oregon Auto Ins. Co.*, 263 Or 449, 455, 502 P2d 1378, 1381-82 (1972). Relying on *Chalmers*, the Ninth Circuit formulated the following eight factors as relevant to the question of reasonable attorney fees sought under ORS 742.061:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the result obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyers performing the  services; and
> (8) whether the fee is fixed or contingent.

*Kabatoff v. Safeco Ins. Co. of Am.*, 627 F2d 207, 210 (9th Cir 1980).

The party claiming the attorney fees has the burden of proving the amount and reasonableness of the fees. *City of Hillsboro v. Maintenance & Const. Serv., Inc.*, 269 Or 169, 172, 523 P2d 1036, 1037 (1974).

Miller requests attorney fees of $70,814.90, consisting of 301.34 hours at an hourly rate of $235. Progressive raises several objections to this amount, each of which is discussed below.

**A.** **Hourly Rate**

Progressive first objects to applying the current hourly rate of $235 to all of the hours expended by Miller's attorney since August 2000. Miller's attorney, Michael B. Mendelson, initially charged an hourly rate of $175. In March 2001, he increased his hourly rate to $225 and again in January 2003 to $235. Progressive contends that Miller is only entitled to the historic rates charged by Mr. Mendelson at the time he rendered his services with no adjustment for inflation or the time value of money.

Mr. Mendelson states that his hourly rates track very closely the average rate in the Oregon State Bar 2002 Economic Survey for attorneys with similar experience in practice in the Portland area. He also states that his hourly rates do not reflect the impact of taking novel, difficult or unpopular cases on a contingent basis, nor the lengthy delay in payment. He also believes that a reasonable hourly fee for this case at the present time would be a minimum of $250 to reflect the reality of litigating against large corporations which are aggressively defended by large law firms.

Although Mr. Mendelson's historic hourly rates may well be within (and near the top of ) the range of comparable rates contained in the Oregon State Bar 2002 Economic Survey, which Progressive does not contest, nothing in this case supports any higher hourly rate. This case was not novel or difficult, but presented a fairly straight-forward dispute over the terms of an insurance policy. Miller has submitted no evidence that this was an unpopular case. The mere

fact of litigating against an insurance company which seeks to enforce an appraisal provision in a policy does not justify a higher hourly rate.

Furthermore, Miller has not paid or even agreed to pay Mr. Mendelson his historic hourly rates. Instead, in May 2001, Miller entered into a partial contingent fee agreement providing for a reduced hourly rate of $40 plus a 25% continency fee. The agreement also provided that Mr. Mendelson would receive the greater of the contingent amount or an hourly fee of $175. By December 2002, Miller could no longer meet his $40 per hour commitment and agreed to convert to a fully contingent fee agreement at an hourly rate of $225 retroactive to May 2001.

The only reason to even consider applying Mr. Mendelson's current rate to all hours incurred since August 2000 is to adjust for a delay in payment. Under the fee-shifting provisions of the Civil Rights Act, 42 USC § 1988, "[a]n adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee." *Missouri v. Jenkins,* 491 US 274, 284 (1989). Because attorneys set their hourly rates based on the assumption that bills will be paid reasonably promptly, delays in payment deprive successful litigants of the market rates. *Id* at 283. To make up the difference, losses from delay can be compensated "by the application of current rather than historic hourly rates or otherwise." *Id* at 284. Thus, a court may make some adjustment for the delay, "but the method of adjustment is somewhat discretionary; it does not necessarily call for payment of the lawyer's current hourly rate." *Anderson v. Director, Office of Workers Compensation Programs,* 91 F3d 1322, 1324 (9th Cir 1996).

Assuming that this court has the same discretion under Oregon law to make some adjustment for a delay in payment, no such adjustment is justified here. Although the Ninth

Circuit in *Anderson* awarded a current hourly rate over the length of the case as a delay enhancement, the circumstances in that case were extraordinary. The delay was 10 years for which the plaintiff's lawyer bore no blame. In contrast, this case was filed in May 2002 and resolved less than three years later. This case clearly could have been resolved faster. Miller is responsible for much of that delay because he and his first appraiser (who was later replaced) frustrated attempts to select an umpire and bring the appraisal to conclusion. Furthermore, Miller's attorney accepted payment by a contingency fee, rather than on a monthly basis, revealing that he did not anticipate payment until the conclusion of the case. Under these circumstances, the court declines to award the current hourly rate of $235 to all hours incurred as an adjustment for the delay.

Thus, $175 applies to all hours before March 2001; $225 applies to all hours from March 2001 through December 2002; and $235 applies to all hours after December 2002. Based on this court's calculation, Mr. Mendelson expended 13.83 hours before March 2001, 187.32 hours between March 2001 and December 2002, and 100.19 hours after December 2002 (13.83 + 187.32 + 100.19 = 301.34).

**B.** **Number of Hours**

**1.** **Unrelated Claims and Parties**

Progressive contends that Miller is not entitled to recover attorney fees for work done on the RICO, negligence and fraud claims for which attorney fees are not authorized. "When a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the trial court must apportion attorney fees, except when there are issues common to both claims." *Bennett v. Baugh*, 164 Or App 243, 247, 990 P2d 917, 920

(1999), citing *Greb v. Murray,* 102 Or App 573, 576, 795 P2d 1087, 1088 (1990). If the claims involve common legal issues, then "fees are not subject to apportionment on the theory that the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims." *Id* at 248, 990 P2d at 921, citing *Freedland v. Trebes*, 162 Or App 374, 378-79, 986 P2d 630, 632 (1999).

Because attorney fees are only recoverable on the claims alleged against Progressive and Harley Davidson Insurance to enforce the policy, the time spent to prosecute all other claims and all other defendants must be deducted, except where common to all claims. Except for a few entries which total 1.6 hours on the negligence and fraud claims,[3] Mr. Mendelson's time records do not identify entries for time incurred on particular claims, and Miller provides no expert testimony as to what would be a proper apportionment of time. Instead, Mr. Mendelson estimates that seven hours were attributable to all work done on the tort claims which he deducted from the total number of hours. He does not estimate how much time was attributable to the RICO claims.

This court's review of Mr. Mendelson's time records reveals entries which total about 2.75 hours specifically dealing with the RICO claims[4] and about 8.6 hours dealing with other non-contract claims in the preparation and filing of the initial Complaint.[5]

---

[3] These entries are 4/16/02 (.4) and 4/17/02 (.3) for the negligence claim and 4/17/02 (.9) for the fraud claim, for a total of 1.6 hours.

[4] These entries are 6/25/01(.65), 11/27/01 (.3), 4/16/02 (1.5), and 6/18/02 (.3).

[5] These entries are 5/18/01(1.3) and 7/2/01 (1.0), as well as half of the time for the entries on 5/21/01 (2.5), 6/26/01 (.5), 12/13/01 (.4), 2/28/02 (1.3), 3/3/02 (.7), 3/26/02 (1.6), 4/15/02 (2.8), and 4/18/02 (2.8) which relate to all of the claims in the Complaint, half of which are non-contract claims.

In addition, the Amended Complaint added allegations that the Latus defendants (Latus Motors, Pollack and Logsdon) made the allegedly fraudulent misrepresentations about the terms of the policy. Miller later abandoned all of his claims against the Latus defendants. As a result, Miller is not entitled to recover 4.05 hours incurred in connection with the preparation and filing of the Amended Complaint.[6] In addition, about 3.0 hours were incurred in connection with serving and then dismissing defendants named only on the RICO and tort claims.[7]

Together, the non-recoverable time for unrelated claims and defendants totals about 20 hours (1.6 + 2.75 + 8.6 + 4.05 + 3.0), or about 13 hours more than the 7 hours already excluded by Miller. Thus, an additional 13 hours should be deducted as time spent on unrelated claims. Of those 13 hours, 1.8 were incurred in 2003 at the hourly rate of $235, and the remaining 11.2 hours were incurred between March 2001 and December 2002 at the hourly rate of $225.

## 2. <u>Resisting Appraisal</u>

Progressive also objects to Miller's request for 89.8 hours (22.1 hours in legal research and 67.7 hours for drafting) between June 13 and September 24, 2002, unsuccessfully attempting to avoid compliance with the appraisal provision in the insurance policy. This time includes filing Objections to the Findings and Recommendation, as well as a Motion for Partial Summary Judgment and Consolidation with his Objections, both of which were denied. Judge Redden concluded that the filing of the Motion for Partial Summary Judgment was contrary to the stay, did not submit additional evidence, and was simply an attempt to sidestep the procedure for referring the Findings and Recommendation.

---

[6] These entries are 5/09-20/02.

[7] These entries are 6/25/02 (.4), 7/3/02 (.3), 7/10/02 (.3), 10/31/02 (.2), 1/7/03 (.1), 5/1/03 (.6), 7/16/03 (.2), 8/18/03 (.3), and 10/2/03 (.6). Of these entries, 1.8 hours were incurred in 2003..

Miller's Objections and Motion for Partial Summary Judgment were ultimately unsuccessful and did not contribute to a successful outcome. However, the issue is whether it was reasonable for Miller to file those pleadings at the time he did so.

Because the parties did not consent to a Magistrate Judge for all proceedings, they each had the option to file objections to the Findings and Recommendation. Even if Miller's objections were denied, this court cannot conclude that they were frivolous and designed only to run up the cost of litigation. Besides, as Miller points out, 11 of these hours between September 3 and 19, 2002, were spent responding to defendants' Objections to the Findings and Recommendation.

The filing of the Motion for Partial Summary Judgment is more problematic. It is not at all clear why it was filed. Had Miller's Objections been successful, the case would not have been stayed and Miller could have sought summary judgment at a later date. The Motion for Partial Summary Judgment did not address a different dispositive issue, was essentially misplaced, and required defendants and the court to respond. The filing of that motion indicates an unfamiliarity with federal procedure and practice and should not be rewarded. This court's careful review of the time records reveals that 30 hours should be deducted for the time spent from July 29 through October 23, 2002, on the Motion for Partial Summary Judgment.[8]

### 3.    Unreasonable and Duplicative Time

Progressive further objects to 21.5 hours spent between September 23 and 25, 2003, to draft a three-page memorandum that no breakdown had occurred in the appraisal process. This time was spent responding to defendants' Motion to Compel Compliance with Order to

---

[8] This calculation excludes the time incurred from August 26-29, 2002, on the "combined memorandum in support of summary judgment and objections."

Complete Appraisal or Alternative Request for Appointment of an Umpire (docket #67). It certainly was not unreasonable for Miller to file a response to defendants' motion, and the time incurred was only 4.0 hours, not 21.5 hours as claimed by Progressive. Thus, this objection is not well-taken.

Progressive also objects to 7.5 hours spent in unsuccessful efforts to maintain contact with the first appraiser and 5.4 hours to bring a second appraiser into the process. As discussed below, that time is deducted as part of the appraisal process for which attorney fees are not recoverable.

### 4.      Appraisal Process

Progressive objects to any time incurred in the appraisal process by Miller because the appraisal established that Miller had substantially exaggerated and overstated the fair market value of his motorcycles. The umpire determined that the actual cash values and replacement values were less than the appraisals submitted by Miller in his application for the policy.

However, the appraisal process failed to conclude in any agreement as to values because neither of the parties' appraisers accepted the umpire's conclusions. In fact, had the umpire's conclusions been accepted, Miller would have been benefitted to some extent. Under the policy, Miller was entitled to recover the lesser of the Stated Value or the replacement value. Although the umpire also decided that the replacement values were less than Miller's initial appraisals (upon which the Stated Values were based), the replacement values were more than the amount already paid by Progressive.

Even had Miller prevailed as a result of the appraisal, he would not be entitled to recover his fees incurred in the appraisal process. For the appraisal to proceed, this case was stayed on

October 16, 2002. Thus, all time incurred in completing the appraisal from October 16, 2002, through February 2005 when the appraisal process ended in failure, was not time incurred to prosecute this action. Accordingly, it is not recoverable under ORS 742.061 which specifically refers to "the action."

Unfortunately, the appraisal process took much longer than either the parties or the court anticipated. As a result of that delay, from November 2002 through February 2005, Miller was required to make 28 monthly status reports to the court. Miller is entitled to recover his time incurred to check on the status of the appraisal process and to prepare and file status reports, as well to respond to defendant's motions filed in September 2003 (docket #67) and May 2004 (docket #84) seeking the court's intervention to expedite the appraisal process. However, some of the status reports would have been unnecessary had the appraisal process, and in particular the selection of an umpire, been completed sooner. And some, but not all, of that delay appears to be directly attributable to Miller's first appraiser. Miller began evidencing frustration with his first appraiser in December 2003 and changed appraisers in June 2004. Had Miller's first appraiser not dropped the ball, it is more than likely that the delay between December 2003 and June 2004 could have been avoided. Accordingly, 6.25 hours should be deducted for the time spent preparing the status reports from December 2003 through June 2004.

Based on this court's review of Mr. Mendelson's records, and with the benefit of any doubt as to any particular time entry given to Miller, an additional 15.97 hours should be deducted for time incurred to complete the appraisal process. This time was unrelated to the preparation and filing of periodic status reports or to responding to defendants' motions. Of

those 15.97 hours, 5.82 hours were incurred before January 2003 at an hourly rate of $225 and the remaining 10.15 were incurred in 2003 and after at the hourly rate of $235.

### 5.    Preparing Attorney Fee Request

After May 3, 2005, when this case settled, Mr. Mendelson recorded 43.9 hours to research and draft his request for attorney fees and costs,[9] plus another 5.3 hours to draft the Reply, for a total of 49.2 hours.[10]  Progressive objects to this time as excessive and unreasonable for a case involving a claim for $31,250 and resulting in a settlement of $45,000 plus attorney fees.

Miller is entitled to recover time spent drafting a motion, memorandum and affidavit and compiling exhibits to support an attorney fee request, but that time should be reasonable in proportion to the amount at issue.  Spending 49.2 hours, or over eight hours a day for six days, to prepare an attorney fee request is clearly excessive.  At an hourly rate of $235 per hour, the time incurred to request attorney fees alone amounts to $11,562, or over 15% of the total fees requested.  Accordingly, this court reduces the amount requested to a more reasonable 20 hours. This is a reduction of 23.9 hours from the original request of 301.34 hours which includes only the 43.9 hours for preparing the attorney fee request and not the 5.3 hours to draft the Reply.

///

///

///

[9]  The court's calculation is slightly different than Progressive's calculation.

[10]  After applying a deduction of 1.5 hours improperly included in his initial request, Miller requests a net addition of 3.8 hours for preparing his Reply.

### 6. **Drafting Complaints**

Progressive objects to 24.4 hours to draft the Complaint and an additional 6.2 hours to draft the Amended Complaint as unreasonable. As discussed above, the time to prepare and file the initial Complaint and Amended Complaint has already been reduced.

### 7. **Preparing Summons**

Although completing summonses should be a simple, clerical matter, Miller asks for 2.3 hours on May 21, 2002, for "checkin[ing] and recheck[ing] that exhibits are attached, pages complete and that all documents are properly signed." Miller responds that there were eight defendants and three sets of documents for each of them. However, Miller is entitled to recover attorney fees only as to his contract claims against Progressive. Accordingly, this time which was primarily incurred for the other defendants is not recoverable.

### 8. **Dealing with Insurance Commissioner's Office**

Progressive objects to 8.43 hours for "[t]ime spent attempting to obtain the intervention of the Insurance Commissioner's Office" between August 24, 2000, and June 1, 2004, which it claims was done solely to exert pressure on Progressive and not to materially contribute to the resolution of the dispute. Miller counters that his inquiries prior to filing suit provided insight into the operation of the policy under Oregon law and also supplied information concerning Progressive.

Miller's initial contact with the Insurance Commissioner's Office in August 2000 was to determine whether Stated Value policies were subject to any statutes and whether the controversy over the interpretation of the policy could be submitted to the Insurance Division. Without the opportunity to review the correspondence between the parties, this court cannot

ascertain whether those inquiries were made in good faith or merely, as Progressive argues, to extort a settlement. It appears to be the former since the Insurance Division advised that ambiguity in the policy could be reviewed and that the appraisal requirement could be unreasonable. *See* 1/23/01 entry on Exhibit AI. Miller again contacted the Insurance Division on June 1, 2004, to inquire about the statutory appraisal rules and procedures, which was certainly not a malevolent inquiry. Thus, Progressive's objection is not well-taken.

### 9. Performing Clerical Functions

Finally, Progressive objects to 1.4 hours spent by Mr. Mendelson to file documents at the courthouse. Miller responds that time spent by Mr. Mendelson to personally file important documents nine times was both prudent and necessary to insure against loss of the documents, guarantee immediate receipt of a conformed copy, and allow for minor last minute corrections and changes. Even if true, these are still functions routinely performed by non-lawyers which do not qualify as legal work and should not be recoverable as attorney fees. This time was incurred in 2002.

### C. Summary

Based on the foregoing, Miller's attorney fees should be reduced to $48,460.15, calculated as follows:

May 2000 - March 2001:

Total of 13.83 hours x $175/hour = $2,420.25

March 2001 - December 2002:

187.32 hours requested less:

11.2 hours (unrelated claims)

17 - FINDINGS AND RECOMMENDATION

30.0  hours (Motion for Partial Summary Judgment)

5.82 hours (appraisal process)

2.3 hours (preparing summons)

1.4 hours (filing documents)

Total of 136.6 hours x $225/hour =  $30,735.00

January 2003 - present:

100.19 hours requested less:

1.8 hours (unrelated claims)

6.25 hours (delay in completing appraisal)

10.15 hours (appraisal process)

23.9 hours (attorney fee request)

Total of 58.09 hours x $235/hour = $13,651.15

Total attorney fees:  $2,017.75 +  $30,735.00 + $13,651.15 =  $46,806.40

Even this amount seems high for a case that involved only a few motions and no discovery.  However, this court has addressed each objection made by Progressive and can identify no other glaring concern.

**III.      Amount of Costs and Out-of-Pocket Expenses**

Miller seeks to recover costs and disbursements in the sum of $1,244.04.  Progressive objects to all of these costs, except the filing fee of $130, as not taxable under 28 USC § 1920.  Although a district court has broad discretionary power to allow or disallow a prevailing party to recoup the costs of litigation, the court may not tax costs beyond those authorized by 28 USC § 1920.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 US 437, 441-42 (1987).

However, Miller is not seeking costs as the prevailing party under 28 USC § 1920, but is seeking recovery of his out-of-pocket expenses as part of his award of attorney fees. ORS 742.061 taxes attorney fees as part of the "costs of the action." "Out-of-pocket" litigation expenses are reimbursable as part of the attorneys' fee, distinct from the costs already awarded to plaintiff under 28 U.S.C. § 1920. . . . Reasonable expenses are allowed as part of the fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F2d 403, 407 (9th Cir 1990). The same rule applies in Oregon. *Willamette Prod. Credit Ass'n. v. Borg-Warner Acceptance Corp.*, 75 Or App 154, 158-59, 706 P2d 577, 579-80 (1985), *review denied*, 300 Or 477, 713 P2d 1058 (1986). Thus, Miller is entitled to recover his reasonable out-of-pocket expenses as part of his attorney fees.

However, Miller is only entitled to recover those out-of-pocket expenses which pertain to his contract claims against Progressive. For the same reasons that he is not entitled to recover attorney fees related to his other claims, the other seven defendants, the Amended Complaint, the Motion for Partial Summary Judgment, or the appraisal process, he is not entitled to expenses related to those same items. As a result, Miller cannot recover the following expenses:

| | | |
|---|---|---|
| 4/18/02: | $ 95.20: | 7 copies of complaint and exhibits for 7 defendants |
| 5/16/02: | 41.40: | copies of Amended Complaint |
| 5/24/02: | 10.00: | tolls calls to and expense for DMV Information for defendants Forst and Rydell for service |
| 7/3/02: | 30.00: | service fee on Alta Pollack |
| 7/3/02: | 30.00: | service fee on Kimberly Logsdon |
| 7/3/02: | 30.00: | service fee on Andy Boylan |

| | | |
|---|---|---|
| 6/13/02: | 19.15: | copy and mail Amended Complaint |
| 8/30/02: | 59.60: | 7 copies of objections and all copies of motions |
| 9/25/02: | 39.00: | copies of summary judgment responses |
| 9/25/02: | 6.08: | postage to mail summary judgment responses |
| 9/26/02: | 27.84: | copies and postage for reply in support of summary judgment |
| 10/9/02: | 8.48: | copy and postage for finalized affidavit |
| 10/21/02: | 6.50: | copy of Miller's DMV registration |
| 8/18/03: | 4.48: | copy and mail Stipulation of Dismissal |
| 10/2/03: | 7.48: | copy and mail Notice of Dismissal |
| 11/27/03: | 4.37: | copy and mail letter to Stu Jones |
| 5/17/04: | 2.71: | copy and mail letter to attorney Jones |
| 12/16/04: | 2.40: | fax to Paul Gustafson |
| 12/21/04: | 2.34: | copy and mail letter to Stu Jones |
| TOTAL: | $ 427.03 | |

The remaining expenses appears to be reasonable. Accordingly, Miller is entitled to recover out-of-pocket expenses in the sum of $817.01 ($1,244.04 - $427.03 = $817.01).

## **RECOMMENDATION**

For the reasons stated above, plaintiff's Request for Determination of Attorney Fees, Costs and Disbursements (docket #112) should be GRANTED against defendant Progressive Northwestern Insurance Company in the reduced sum of $46,806.40 for attorney fees plus $817.01 for out-of-pocket expenses, for a total of $47,623.41.

///

## SCHEDULING ORDER

Objections to this Findings and Recommendation, if any, are due **July 29, 2005**.  If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 11th day of July, 2005.

/s/  Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge